IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LLOYD FRANCIS, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-0914 |
| | : | |
| AMBER TIFFANY SMITH, *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

**BARTLE, J.**                                                                                                                MAY 14 , 2024

      *Pro se* Plaintiff Lloyd Francis asserts constitutional claims against various defendants after he was served with a protection from abuse order, criminally charged with harassment and stalking offenses, and had his parental rights to his minor child terminated. Francis seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Francis leave to proceed *in forma pauperis*[1] and dismiss his Complaint upon screening pursuant to 28 U.S.C. § 1915(e).

**I.     FACTUAL ALLEGATIONS**[2]

      Francis names the following Defendants in the Complaint: (1) Amber Tiffany Smith, the mother of his minor child; (2) Delta Community Support, a non-profit organization that employs

---

[1] The Court initially denied Francis leave to proceed *in forma pauperis* because his motion failed to provide sufficient financial information to allow the Court to determine whether he qualified. (*See* ECF No. 4.) Instead of filing an amended motion to proceed *in forma pauperis*, as the Court directed him to do in its March 14, 2024 Order, Francis filed two Motions to Reconsider the initial denial. (*See* ECF Nos. 5, 6.) Upon review of the Motions to Reconsider, the Court concludes that Francis qualifies for *in forma pauperis* status because it appears that he is incapable of paying the fees to commence this civil action.

[2] The facts set forth in this Memorandum are taken from Francis's Complaint. The Court adopts the pagination supplied by the CM/ECF docketing system.

Smith as a social worker; (3) Joelle Shanesy, Esquire, Smith's private legal counsel; (4) Karen Fortune, Esquire, an attorney for the City of Philadelphia; (5) Janee Johnson, a social worker employed by the City of Philadelphia; and (6) Judge Tiffany Palmer, a Philadelphia Court of Common Pleas Judge.  (Compl. at 1-2.)  Francis alleges that he and Smith are the parents of a minor child[3] and that Smith, despite an alleged "history of violence" and twice being reported to the "Philadelphia Childline for Violent Child Abuse," was able to secure full custody of the child.[4]  (*Id*. at 2-3, 7, 8.)  Francis further alleges that shortly after he attempted to secure sole custody of the child in June of 2022, Defendants "collusively engaged[d]" in "actions to allow Amber Smith to legally harass and abuse" him.  (*Id*. at 5.)  Such actions included concealing from Francis the ChildLine report against Smith, presumably so he could not use it against her in the custody proceedings; aiding Smith in securing a protection from abuse ("PFA") order against Francis in the Montgomery Court of Common Pleas; and assisting Smith with her filing of "malicious, frivolous, and vexations" litigation against Francis to secure custody of their shared minor child.  (*Id*. at 2.)  Francis states that Smith "ensured" that Francis was charged with stalking and harassment.[5]  (*Id*. at 5.)

---

[3] In his Complaint, Francis included the unredacted names of minor children, in violation of Federal Rule of Civil Procedure 5.2(a) and Local Rule 5.1.3.  The Complaint will therefore be restricted to Case Participants View Only.  If Francis intends to file additional documents with the Court, he should not include the names of any minor children in his filings and should refer to any minor children, if necessary, by initials only.  *See* Fed. R. Civ. P. 5.2(a).

[4] The Court understands Francis to be referring to a Pennsylvania state resource, ChildLine, which is a "mandated statewide child protective services program designed to accept child abuse referrals and general child well-being concerns."  *See* https://www.dhs.pa.gov/KeepKidsSafe/Resources/Pages/ChildLine.aspx (last visited May 10, 2024).

[5] The public record reflects that on July 27, 2022, Francis was charged with stalking, harassment, possession of an instrument of crime, and disorderly conduct.  *See Commonwealth v. Francis*, CP-46-CR-0005970-2022 (C.P. Montgomery).  Many of the charges appear to have

2

Although his fifteen-page Complaint is replete with legal conclusions, Francis describes each named Defendants' role in his alleged constitutional harm. He states that Judge Palmer "interfere[ed]" with his custody and criminal proceedings. (*Id*. at 13.) For example, Judge Palmer issued a five-month continuance of his custody case "to aid Smith" in avoiding criminal charges in connection with the ChildLine report lodged against her.[6] (*Id*.) Francis alleges that Shanesy, who represented Smith in the custody proceedings, "filed vexations and misleading petitions" in the Philadelphia Family Court on behalf of her client, including a petition to hold Francis in contempt of a custody order. (*Id*. at 5-7.) Shanesy also introduced "unfounded" evidence of domestic abuse and the criminal proceedings pending against Francis during the custody proceedings, which according to Francis was "a clear violation" of the Federal Rules of Civil Procedure. (*Id*. at 6.)

Frances states that Fortune is legal counsel for the City of Philadelphia's Department of Human Services. (*Id*. at 1.) Fortune allegedly sent Francis "misleading and egregiously false correspondence" about child abuse investigations of Smith. (*Id*. at 8.) In particular, Fortune was aware that Smith had been reported to the ChildLine for "violent child abuse for a second time," but nevertheless allegedly represented to Francis that no report had been received and no investigation had taken place. (*Id*. at 10.) Francis also alleges that when he petitioned for a PFA against Smith, Fortune was involved in the denial of that PFA. (*Id*. at 8-10.) Francis states that

---

been *nolle prossed*, with the exception of the disorderly conduct charge, to which Francis pled guilty and received a sentence of one year of probation. *See id*.

[6] The Court understands Francis to be contending that Judge Palmer's continuance extended the child custody matter beyond Pennsylvania's two-year statute of limitations for bringing child abuse charges against Smith. *See* 42 Pa. Cons. Stat. § 5552(a) (stating that offenses, including one for endangering the welfare of a child pursuant to 42 Pa. Cons. Stat. § 4304, must be commenced within two years after it is committed); *see also Spanier v. Dir. Dauphin Cnty. Prob. Servs.*, 981 F.3d 213, 218 (3d Cir. 2020).

he received an "endorsement letter" by a Family Court Master to obtain the PFA against Smith; however, the endorsement needed to be signed by Child Protective Services. (*Id*. at 9-10.) Fortune was the "correspondent" from Child Protective Services who denied the endorsement for the PFA. (*Id*. at 10.) Johnson is alleged to be a "Social Work Supervisor" with the City of Philadelphia's Department of Human Services. (*Id*. at 2.) Francis alleges that Johnson received the second child abuse report about Smith but "negligently" failed to notify Francis of the report even though she had Francis's contact information. (*Id*. at 11.) Francis allegedly left Johnson a voicemail asking about the investigation and report, but Johnson never returned his phone call. (*Id*. at 12.) Francis states that Johnson did not enter the ChildLine report into the ChildLine database in order to prevent Smith from being suspended, terminated, or investigated by law enforcement. (*Id*.)

Francis does not allege many facts about Delta Community except that it employed Smith as a social worker. (*Id*. at 5). Without factual support, Francis alleges that Delta Community "misled" child protective services investigators and prosecutors and aided in "obstructing" the child abuse investigation of Smith. (*Id*. at 11.) Finally, Francis alleges that Smith has a history of violence and has committed fraud in connection with childcare assistance and welfare. (*Id*. at 3-4.) Smith allegedly "made numerous false statements to law enforcement and social services" in order to "gain leverage in custody proceedings" and to secure criminal charges against Francis. (*Id*. at 4.)

Based on these allegations, Francis asserts due process claims against Defendants under the Fourteenth Amendment.[7] (*Id*. at 3.) For relief, he requests money damages. (*Id*.) He also

---

[7] Francis's passing references to violations of his First, Second, Fourth and Sixth Amendment rights (*see* Compl. at 3) are not sufficient to raise any such claims. *See Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D.

requests that the Defendants be terminated from their employment and that they be criminally indicted.[8] (*Id.*)

## II.   STANDARD OF REVIEW

The Court grants Francis leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting

---

Pa. Oct. 7, 2022) (stating that a "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other.") (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)); *Alexis v. Sessions*, No. 18-2099, 2018 WL 5077899, at *2 n.1 (D.N.J. Oct. 18, 2018).  In any event, the facts alleged do not support a plausible claim under any of these constitutional amendments.

[8] The Court has no authority to order that a defendant be terminated from their employment as relief in a § 1983 civil rights case.  *See Hall v. Carny*, Civ. A. No. 22-4094, 2023 WL 187569, at *1 (E.D. Pa. Jan. 13, 2023) (dismissing with prejudice the request that defendant prison official be terminated from his employment).  The Court also has no authority to order that a defendant be criminally charged.  *See Lewis v. Jindal*, 368 F. App'x 613, 614 (5th Cir. 2010) ("It is well-settled that the decision whether to file criminal charges against an individual lies within the prosecutor's discretion, and private citizens do not have a constitutional right to compel criminal prosecution.") (citations omitted).

*Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Francis is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

The Court understands Francis to assert due process claims against Defendants in connection with his criminal charges, the PFA filed against him, and the termination of his parental rights. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). As set forth below, Francis has not stated plausible § 1983 claims against any Defendant.

### A. Claims against Judge Tiffany Palmer

Francis's claims against Judge Palmer are barred by absolute judicial immunity. Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (per curiam). "A judge will not be deprived of immunity because the action [s]he took was in error, was done maliciously, or was in excess of his authority." *Capogrosso v. The Supreme Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009) (citations omitted). Moreover, "[i]mmunity will not be forfeited because a judge has committed 'grave procedural errors,' or because a judge has conducted a proceeding in an 'informal and *ex parte*' manner",

6

. . . [or] because the judge's action is 'unfair' or controversial." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 769 (3d Cir. 2000) (citations omitted). A judge will be subject to liability only "when [s]he has acted 'in the clear absence of all jurisdiction.'" *Id.* (quoting *Stump*, 435 U.S. at 356-57). "Generally, . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).

Francis's claims against Judge Palmer arise from her involvement in Francis's custody proceedings. Francis alleges that Judge Palmer conspired to interfere with the custody of his minor child by encouraging criminal charges be filed and by issuing a continuance in the custody matter so that the two-year statute of limitations on Smith's alleged abuse investigation could lapse. Even assuming these allegations were true, Judge Palmer presided over his custody matter and thus had jurisdiction to do so as a Judge of the Court of Common Pleas. Francis has not alleged any facts that would support a plausible inference that Judge Palmer acted in the absence of all jurisdiction. *See Lee v. Gallina Mecca*, No. 22-2871, 2023 WL 5814783, at *4 (3d Cir. Sept. 8, 2023) ("But even accepting Lee's allegations as true, judicial acts that appear to be unfair, malicious, or *ex parte* are not stripped of their judicial immunity); *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 660 (E.D. Pa. 2014) (finding judges who presided over protection from abuse, custody, and divorce proceedings were entitled to immunity because plaintiff did not show an absence of jurisdiction and immunity applied despite allegations of bad faith and conspiracy), *aff'd*, 572 F. App'x 68 (3d Cir. 2014); *see also Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("[J]udicial immunity is not overcome by allegations of bad faith or malice."); *Stump*, 435 U.S. at 356 ("A judge will not be deprived of immunity because the action he took was in error, was

7

done maliciously, or was in excess of his authority."); *Dennis v. Sparks*, 449 U.S. 24, 29 (1980) (holding that immunity applies even if a judge conspired with litigants).

### B. Claims against Delta Community Support

Francis names as a Defendant Delta Community Support,[9] alleging that it employs Smith despite Smith having been the subject of child abuse reports. (Compl. at 5.) Francis also alleges, without any explanation or factual support, that Delta Community "misled" child protective services investigators and prosecutors and aided in "obstructing" the child abuse investigation of Smith. (*Id*. at 11.) As noted above, to state a plausible § 1983 claim, a plaintiff must allege a constitutional deprivation committed by *a person acting under color of state law*." *West*, 487 U.S. at 48 (emphasis added). Whether a defendant is acting under color of state law – *i.e.*, whether the defendant is a state actor – depends on whether there is " such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). " To answer that question, [the United States Court of Appeals for the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

---

[9] Delta Community is a non-profit organization that provides community-based support services. *See* Delta Community Supports, https://deltaweb.org/about-delta/ (last visited May 10, 2024).

Francis has not included any facts about Delta Community's specific involvement in his alleged constitutional harm aside from the allegation that it is Smith's employer. Francis has not alleged any facts to suggest that Delta exercises powers that are traditionally attributed to the state. Nor has he alleged any other facts to support an inference that Delta Community is a state actor under the tests developed by the Third Circuit in *Kach*. *See, e.g., Gray v. Zook*, No. 20-1366, 2020 WL 13729665, at *5 (M.D. Pa. Sept. 17, 2020) (dismissing claim against non-profit agency that provides services to domestic violence victims where the plaintiff alleged no facts to suggest that it was a state actor); *Johnson v. Bridge*, No. 14-884, 2014 WL 2711795, at *1 (E.D. Mo. June 16, 2014) (dismissing § 1983 claims against non-profit organization where the plaintiff alleged only that the non-profit receives state funds). Accordingly, Francis has failed to allege that that Delta Community is a state actor subject to liability under § 1983.

Even if Francis had sufficiently pled state action, the claims against Delta Community would nevertheless be dismissed. Non-profit organizations, like municipalities, will not be liable under § 1983 for the acts of its employees under a theory of *respondeat superior*. Non-profit organizations can only be liable under § 1983 when an official policy or custom of the non-profit organization causes the deprivation of constitutional rights. *See Kirby v. Visionquest Nat'l, Ltd.*, No. 15-6208, 2016 WL 1623439, at *3 (E.D. Pa. Apr. 25, 2016) (applying standard for municipal liability from *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978), to § 1983 claims asserted against a non-profit company in the business of managing troubled youths that was appointed as an *in loco parentis* guardian for the minor plaintiff ). Francis alleges no facts suggesting that his alleged constitutional harms were caused by a Delta Community policy or custom. Accordingly, Francis's § 1983 claims against Delta Community must be dismissed.

### C. Claims against Joelle Shanesy, Esquire

Joelle Shanesy, Esquire, the privately retained attorney for Smith in the custody proceedings, is also not a state actor based on the facts, as pled. "Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court." *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999); *see also See Gannaway v. Stroumbakis*, 842 F. App'x 725, 730 (3d Cir. 2021) (per curiam) (noting that "[a] privately retained attorney clearly does not act under color of state law, and . . . that 'no color of state law attache[s] to the functions of court-appointed counsel.'") (citation omitted). This rule applies equally to court-appointed or privately retained attorneys in family court matters, including matters involving child custody or protection from abuse. *See, e.g.*, *Shallow v. Rogers*, 201 F. App'x 901, 904 (3d Cir. 2006) (per curiam) (affirming district court's dismissal of § 1983 claims against wife's attorney in custody dispute because attorney was not acting under color of state law); *Heffley v. Steele*, 826 F. App'x 227, 231 (3d Cir. 2020) (per curiam) (same); *Ludwig v. Berks Cnty., Pa.*, 313 F. App'x 479, 482-83 (3d Cir. 2008) (per curiam) (concluding that husband's attorney in custody proceedings was not a state actor and thus not be liable in mother's § 1983 action); *Broadnax v. City of Philadelphia*, No. 23-1533, 2023 WL 3097218, at *3 (E.D. Pa. Apr. 26, 2023) ("Courts have overwhelmingly found that the filing of a petition for a protection from abuse order does not render a private individual a state actor.").

Francis alleges that Shanesy filed "vexatious and misleading" petitions on behalf of Smith, introduced "unfounded" evidence of domestic abuse in the custody proceedings, and petitioned the family court to hold Francis in contempt of a custody order. (Compl. at 5-7.) The allegations describe Shanesy performing traditional legal-related functions in connection with

10

her representation of Smith. Nothing in the Complaint raises a plausible inference that there was "such a close nexus between the State and the challenged action[s]" to convert Shanesy's private representation of Smith in the custody proceedings into state action for purposes of liability under § 1983. *See Mikhail v. Kahn*, 572 F. App'x 68, 71 (3d Cir. 2014) (per curiam) (finding attorneys who represented wife in protection from abuse, custody, and divorce proceedings were not state actors subject to liability under § 1983). Accordingly, Francis's § 1983 claims against Shanesy will be dismissed.

        D.     **Claims against Karen Fortune, Esquire**

Francis also names as a Defendant Karen Fortune, Esquire, who is an attorney for the City of Philadelphia. Courts have repeatedly held that a municipal attorney like Fortune does not act under color of state law simply by virtue of acting as an attorney or solicitor on behalf of a municipal entity. *See, e.g.*, *Angelico*, 184 F.3d at 277; *Anderson v. Perhacs*, No. 11-289, 2013 WL 1336124, at *4 (W.D. Pa. Mar. 29, 2013). However, "there are three exceptional circumstances in which an attorney may become a state actor: (1) by acting as a state official, (2) by conspiring with a state official to deprive a person of his or her constitutional rights, or (3) by engaging in some action that is by its nature, chargeable to the state." *Willis v. Carroll Twp.*, No. 07-949, 2008 WL 644762, at *5 (M.D. Pa. Mar. 5, 2008) (internal citations and quotation marks omitted). In contrast, where the attorney is engaged in the advising a municipal client, drafting legal documents, or otherwise engaged in litigation or equivalent legal activities, he or she will generally not be subject to liability as a state actor. *Angelico*, 184 F.3d at 276-78; *Willis*, 2008 WL 644762, at *5-6. In short, "[w]hen a municipality's attorney goes beyond the traditional attorney-client relationship, she may become a state actor." *Belkowski v. Kruczek*, No. 09-1549, 2010 WL 1433099, at *3 (W.D. Pa. Apr. 7, 2010) (citing *Frompovicz v. Twp. of S.*

11

*Mannheim*, No. 06-2120, 2007 WL 2908292, at *8 (M.D. Pa. Oct. 4, 2007) (holding that a plaintiff states a viable § 1983 claim against an attorney who goes beyond making recommendations and decides official government policies)).

Francis alleges that Fortune sent misleading correspondence denying that there was an abuse investigation of Smith despite being notified of the ChildLine report against Smith. (Compl. at 8-10.) In addition, Francis alleges that Fortune was responsible for denying the PFA against Smith that been endorsed by a Court Master. (*Id*. at 9-10.) None of these allegations supports a plausible inference that Fortune's role extended beyond the traditional attorney-client relationship. Nor do the allegations support a plausible inference that Fortune engaged in any conspiracy as the Complaint contains no facts about a conspiratorial agreement between Fortune and any state actor. *See Mikhail*, 572 F. App'x at 71-72 (affirming dismissal of § 1983 claims against attorney in family court matters where "allegations of conspiracy were conclusory and insufficient to suggest that a conspiratorial agreement existed between the private actors and the other defendants"). Accordingly, Francis's § 1983 claims against Fortune will also be dismissed.

### E. Claims Against Tiffany Amber Smith

Francis also alleges claims against Smith, who allegedly secured a PFA against Francis and received full custody of their shared minor child. Although Francis alleges that Smith is a social worker "in the public sector and in foster care services," none of the events or alleged constitutional harm relates to her role as a social worker. Rather, the allegations against Smith relate entirely to her involvement in custody proceedings over their shared minor child and her securing a PFA and criminal charges against Francis. In this context, Smith is a private individual and not a state actor subject to liability under § 1983. *See Humphrey v. Pa. Ct. of Common Pleas of Phila.*, 462 F. Supp. 3d 532, 536 (E.D. Pa. 2020) (dismissing § 1983 claims

against mother who gained custody of child in lawsuit brought by father); *Mikhail*, 991 F. Supp. 2d at 667-68 (dismissing § 1983 claims against wife and her attorneys "because they were not state actors"). Merely resorting to the courts and being on the winning side of a lawsuit, like the custody dispute described by Francis, does not make one a state actor for purposes of § 1983. *See Dennis*, 449 U.S. at 28. Accordingly, all claims against Smith must also be dismissed.

### F. Claims against Social Worker Janee Johnson

Francis's claims against Johnson, an employee of the City of Philadelphia, are based on Johnson's alleged "negligence" in handling the second ChildLine report made about Smith, and in particular, Johnson's failure to notify Francis about the report. The allegations concerning Johnson fail to state a plausible constitutional claim for two reasons. First, § 1983 claims may not be predicated on a state actor's mere negligence. *See Canton v. Harris*, 489 U.S. 378, 387 (1989) (holding that mere negligence in training cannot form basis of § 1983 liability); *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (holding that official's mere negligence is not actionable under § 1983 because "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property"). Second, assuming there was a second ChildLine report made against Smith, Johnson, who is a county employee and not a state employee, was under no obligation to notify Francis about the report since he was not alleged to be the subject of the report. *See* 55 Pa. Code § 1390.91 (listing the only recipients to receive notice of a ChildLine abuse report, including the subject to the report but not including a parent or guardian); *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 239 (3d Cir. 2013) (concluding that county defendants could not be liable for a violation of a father's due process rights in not being notified that he was the subject of a ChildLine report because Pennsylvania's Child Protective Services Law allocates responsibility for providing such notice to the

Pennsylvania Department of Public Welfare and not to county agencies). Accordingly, any § 1983 claims against Johnson must also be dismissed.

G. **State Law Claims**

It is possible that Francis intends to assert state law claims based on allegations that Defendants were negligent in regard to child abuse investigation against Smith. Because the Court has dismissed Francis's federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims. Accordingly, the only independent basis for jurisdiction over state law claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over civil actions between citizens of different States where the amount in controversy exceeds $75,000. Complete diversity is required, meaning that "every plaintiff must be of diverse state citizenship from every defendant." *In re Briscoe*, 448 F.3d 201, 215 (3d Cir. 2006); *Lincoln Benefit Life Co.*, 800 F.3d 99, 104 (3d Cir. 2015). An individual is a citizen of the state where they are domiciled, meaning the state where they are physically present and intend to remain. *See Washington v. Hovensa, LLC*, 652 F.3d 340, 344 (3d Cir. 2011). A non-profit corporation is a citizen of both its state of incorporation and principal place of business. *See SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 202 (3d Cir. 2022). Although Francis does not allege his citizenship, he lists a Pennsylvania address for himself as well as for each of the named Defendants. Thus, it appears that diversity jurisdiction is lacking over this action. Accordingly, to the extent Francis intended to assert state law claims, they will be dismissed without prejudice for lack of subject matter jurisdiction.

IV. **CONCLUSION**

For the foregoing reasons, the Court will grant Francis leave to proceed *in forma pauperis* and dismiss his Complaint pursuant to 28 U.S.C. § 1915(e). Leave to amend will not

be given as the Court concludes that any attempt to amend would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002). An appropriate order follows dismissing this case.